## Puterbaugh's Estate.

*Trusts and trustees—Accounting—Findings of fact.*

A finding of fact by an orphans' court judge auditing an account himself without reference to an auditor, which results in a surcharge of a trustee, will not be reversed by the appellate court where the record discloses sufficient evidence tending to support the finding, and there is nothing to show palpable or manifest error on the part of the judge.

Argued Dec. 6, 1909.    Appeal, No. 199, Oct. T., 1909, by George E. Stauffer, trustee, from order of O. C. Monroe

Co., dismissing exceptions to adjudication in Estate of Isaac T. Puterbaugh. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Exceptions to adjudication. Before SANDO, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*F. B. Holmes*, for appellant.

OPINION BY HEAD, J., October 10, 1910:

A patient examination of the complicated and somewhat confusing mass of figures, of which this record is almost entirely composed, fails to reveal any principle of law or rule of evidence involved in the contention of the parties. It seems to be conceded that the question about which they differ is one of fact, or "a matter of figures only."

By the will of Isaac T. Puterbaugh the bulk of his estate was devised and bequeathed to the executor therein named as a testamentary trustee, in such manner that the net income thereof should be paid to his son Harrison S. Puterbaugh during his natural life. In the event of his death without issue there was a devise over to other parties with whom we have no concern. The testator died in 1889, and the trustee began the active discharge of the duties of his trust.

The record further shows that Samuel H. Puterbaugh, some time later, died in Luzerne county, and upon a settlement of his estate there was distributed by the orphans' court of the last-named county, to the said Harrison, a sum in excess of $6,000. A dispute arose between the latter and the other legatees mentioned in the will of Isaac T. Puterbaugh as to whether the corpus of this sum

was to go to Harrison S. Puterbaugh absolutely, or whether it was to be added to the trust fund in the hands of his trustee so that the income thereof only would be available to the cestui que trust. Whilst an appeal to the Supreme Court to finally determine this question was pending the parties reached an amicable settlement by agreeing to divide the fund between them. George E. Stauffer, the appellant and the testamentary trustee, already referred to, had also become the administrator of the estate of Samuel H. Puterbaugh. By virtue of the arrangement last referred to he was required to pay over to Harrison S. Puterbaugh absolutely the sum of $3,289.45. It further appears that previous to this time Stauffer, as testamentary trustee for Harrison S. Puterbaugh, had made two loans to him. On these the latter of course paid no interest, as he was the beneficiary under the trust, and the income thereof belonged to him. One of these notes was for $1,500, the other for $1,039.11.

Now when Stauffer, as the administrator of the estate of Samuel H. Puterbaugh, came to pay over to Harrison S. Puterbaugh, his cestui que trust in the other estate, he did it, as he himself declares, in the following manner, to wit:

| | |
|---|---|
| "Cash .............................. | $1,500.00 |
| His own note for money borrowed from estate of Isaac T. Puterbaugh | 1,039.11 |
| And credit on his own note for $1,500, money borrowed from same estate.. | 750.34 |
| | $3,289.45" |

From this it would seem to follow that none of the securities which were in the hands of Stauffer, either as administrator of the one estate or as trustee of the other, passed into the hands of Harrison S. Puterbaugh on account of this payment.

When Stauffer, trustee, filed his account in 1907, after the trust had been in active existence for many years, he

very properly undertook to set forth both a principal and an income account, the two together constituting his account. In this account there appeared, among other items of credit, the following:

"August 28, 1897, By amount of interest from Ace & Decker carried to principal fund in exchange of securities as per supplementary account filed this day and auditor's report thereon......... $203.27"

This item was specifically made the subject of the seventh of a number of exceptions filed to the account. It seems to us reasonably apparent that it was not on its face self-sustaining, and the burden therefore was on the accountant to produce such evidence as would justify the allowance of the credit claimed. In the first adjudication the learned judge of the orphans' court thus disposed of that exception: "The seventh exception is to a credit for a payment alleged to have been made on August 28, 1907, 'by amount of interest from Ace & Decker &c.' We agree with the counsel for the trustee that it is a matter of figures. After due consideration of the calculations, figures and facts, there does not appear to be any satisfactory explanation of the item, the subject-matter of the exception. The seventh exception is therefore sustained." It may here be remarked that outside of the various accounts, principal and supplementary, the account book of the trustee from which they were made up and the various calculations drawn from an examination of these, the testimony before the learned court below was extremely scant, consisting of the oral testimony of the trustee and the cestui que trust only. Both examinations were very brief, and neither of them throws much light, if any, on the exact subject-matter of the controversy.

The accountant applied for and obtained a reargument as to the seventh exception referred to. Upon a reconsideration of the account the learned judge below affirmed his previous adjudication and pointed out that the short-

age of the accountant, if any there might be, arose from an error made by him years before in the distribution of the estate of Samuel H. Puterbaugh and not in the estate of Isaac T. Puterbaugh, then before the court for adjudication. This error, as the court proceeds to point out, arose from the fact that the administrator in the Samuel H. Puterbaugh estate, in making up his account showing the amount in his hands for distribution, charged himself with interest calculated on the securities in his hands down to a certain date, all of which interest, however, was not then actually in his hands. While he thus had potentially the entire balance shown by his account, he would not actually have it in money until this accrued interest would be subsequently paid in by the respective debtors. When the two contestants for this fund suddenly settled their controversy in the manner previously mentioned, the administrator promptly divided between them the fund shown by his account to be in his hands. The difference between the cash actually in hand and the interest with which he had charged himself, thus producing the balance to be divided, was just about the same amount covered by the item now in controversy. Before leaving this subject it is well to observe that if the administrator in the estate of Samuel H. Puterbaugh, by mistake, distributed to the parties entitled more than was actually in his hands, Harrison S. Puterbaugh, the cestui que trust in the estate now before us, was not the sole beneficiary of that error, as he received but one-half the fund. It may also be noted that the administrator at that time took refunding bonds from each of the distributees, and as to this we may quote what was said by the learned judge below, to wit: "What remedy under existing circumstances the accountant has for the error he made years ago, even under the conditions of the indemnifying bond, we cannot say."

The able counsel for the appellant here earnestly challenges the correctness of the statement of fact of the learned judge below as to the origin of the error which

made necessary the insertion of the item in the present account which gives rise to this controversy. In his printed brief, commenting on these facts, he says: "At this stage it is true an error was committed by the administrator by paying over to Harrison S. Puterbaugh, the present exceptant, all of the interest without deducting the $205.50." He argues, however, that this error had nothing to do with the item of credit in the present account complained of, but maintains that the latter had its origin in an entirely different source. He undertakes to show that Harrison S. Puterbaugh, the cestui que trust under the will of his father, became indebted to his trustee in four different amounts loaned to him, which loans were evidenced by notes given to the trustee. These notes include those for $1,500 and $1,039.11, already referred to, and two small notes, all aggregating the sum of $3,081.60. Of this indebtedness to the trust estate it is contended that the cestui que trust repaid only the sum of $2,878.33, leaving him still indebted to the extent of $203.27, which the trustee undertook to repay to himself by the credit in his account which is complained of.

As tending to show the correctness of this contention, the trustee, through his counsel, presents the following statement of the partial payments made by his cestui que trust on account of the indebtedness aforesaid. As the dates and items of this schedule are significant we quote it in full from the paper-book.

| DATE | PAYMENT IN | AMOUNT |
|------|-----------|--------|
| "4–15–90 | Cash. . . . . . . . . . . . . . . . . . . . . | $ 2.25 |
| 8–25–99 | Isaac Stauffer Note. . . . . . . . | 598.00 |
| " " " | " " " . . . . . . . . | 425.00 |
| " " " | " " " . . . . . . . . | 261.38 |
| " " " | Price Bros. Note . . . . . . . . . . | 299.55 |
| 5–6–00 | Cash. . . . . . . . . . . . . . . . . . . . | 300.00 |
| 11–24–01 | " . . . . . . . . . . . . . . . . . . . . | 992.15 |

$2,878.33"

As indicative of some of the difficulties confronting the accountant in supporting this theory we may note the following:

(1) There is no evidence whatever that on April 15, 1890, Harrison S. Puterbaugh paid to the accountant the sum of $2.25 in cash on any account, much less on account of a considerable indebtedness evidenced by notes. What is said to be a copy of the cash account of the trustee, included in what is called by his counsel a trial balance or supplement to appellant's paper-book, shows that on the day named the trustee charged himself with $2.25 cash as having been received "from estate." No further explanation of this item is given. On the remaining dates mentioned in the schedule of partial payments above as the dates on which Harrison S. Puterbaugh paid the sums of $300 and $992.15 respectively, the cash account shows no entries of such amounts having been received from anyone.

(2) We have already seen, from another statement of the accountant, intended to exhibit the manner in which he paid over to Harrison S. Puterbaugh the money that came to him from the estate of Samuel H. Puterbaugh, that the note of Harrison for $1,039.11 was, in that transaction, taken up and paid in full, while his note for $1,500 was in the same manner paid to the extent of $750.34. If this be true it is difficult to see how the same notes could have been paid in the manner disclosed by the last schedule more immediately under our consideration.

(3) It is further claimed that Harrison S. Puterbaugh extinguished, pro tanto, his indebtedness evidenced by his notes on August 25, 1899, by turning over to his trustee three notes of Isaac Stauffer in the sums of $598, $425 and $261.38 respectively. It is not shown by any evidence that Harrison S. Puterbaugh ever had any such notes of Isaac Stauffer; that he had ever made any loans to him, or that he had ever received such notes from his trustee in any transaction that occurred previous to the last-mentioned date. On the contrary, it appears from one

of the accounts, filed by the trustee himself, that some time prior to January 24, 1899, the trustee held notes of Isaac Stauffer amounting to $1,500, $598 and $425 respectively; that on the date last mentioned, to wit, January 24, 1899, the trustee surrendered the three notes last mentioned to Isaac Stauffer, the debtor, taking therefor a new note of the same debtor in the sum of $2,784.38, and at the same time giving to him, to make up the difference in amounts, the trustee's check for $261.38. So again it becomes difficult to see how the cestui que trust on August 25, 1899, turned into his trustee certain notes of Isaac Stauffer which the trustee himself had surrendered to the debtor many months before.

But it is needless to pursue this inquiry further in detail. It is not our province to determine that the inferences of fact to be justly drawn from the evidence conclusively show that the learned court below was right or that the theory of the appellant is untenable. That there is evidence tending to support the finding of the auditing judge and to controvert that urged on us by the appellant, cannot, we think, be denied. The record therefore discloses no such palpable or manifest error as to warrant us in rejecting the finding of fact adopted by the learned court below and accepting that advanced by appellant.

Decree affirmed and the appeal dismissed at the costs of the appellant.